**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | | |
|---|---|---|
| JOHN BRIGNAND, | ) | 3:07-CV-242-ECR-VPC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Order** |
| | ) | |
| VAN WAGONER FUNDS, INC., A | ) | |
| Maryland Corporation doing | ) | |
| business in Nevada, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This case arises out of the purchase of a technology stock fund that went belly up when the "dot com" bubble burst in the early 2000s. The plaintiff, John Brignand ("Brignand"), brings suit against the Van Wagoner Funds, Inc. ("Van Wagoner"), for claims stemming from alleged misstatements that Van Wagoner made with respect to the valuation of certain private holdings.

## I. Background

Sometime in or around July 1999, on the advice of a friend and stock broker, Brignand purchased a significant quantity of a security known as the Van Wagoner Technological Fund. The broker allegedly represented to Brignand that the fund earned a return of 150 percent over the previous year. Brignand knew that the fund was a technology fund, and when the tech market started to decline in

1  the spring of 2000, Brignand switched from the technology fund to a
2  Van Wagoner Cash Fund.  In the summer of 2000, Brignand switched
3  funds again and reinvested in the technology fund.  After this time,
4  Brignand's investment nearly doubled, increasing from approximately
5  $200,000 to approximately $400,000.

6      Later, the technology market again began to decline.  Brignand
7  alleges that Van Wagoner failed to disclose to him that there were
8  "defects in the Van Wagoner Technological Fund and mismanagement of
9  the same." (Second Amended Complaint "SAC" ¶ 16 (#28).)  Sometime
10 in July 2003, Brignand was informed that Van Wagoner would close the
11 Technological Fund.  Brignand was given two choices: either redeem
12 his account or transfer his existing investment into another Van
13 Wagoner fund.  (Id. ¶ 22.)  Brignand cashed out his remaining
14 balance, which amounted to approximately $24,700.

15      Brignand alleges that in March 2005 he discovered the existence
16 of a class action suit filed against Van Wagoner based on
17 mismanagement of investor funds for personal use; Brignand elected
18 not to join the class.

19      In October 2008, Brignand asserts that he "discovered the
20 statements contained in the annual reports for his investment from
21 1999 through . . . 2003 were false in that the NAV [net asset value
22 of certain private holdings] was overstated, the risk of the
23 investment understated, and that company managers were the subject
24 of an[] SEC investigation regarding mismanagement of funds." (Id. ¶
25 34.)

26      With the present suit, Brignand alleges that he would not have
27 purchased the Van Wagoner Technology Fund had Van Wagoner not failed

28                                      2

1  to disclose certain material information to him.  (<u>Id.</u> ¶ 23.)
2  Specifically, Brignand complains that he was not informed of the
3  following information: (1) that several putative class actions were
4  pending against various Van Wagoner funds starting in December 2001;
5  (2) that these cases included allegations that the "Van Wagoner
6  Emerging Growth Fund issued false and misleading statements to the
7  public about [the failure of] Ernst & Young, LLP . . . to follow
8  Generally Accepted Accounting Practices and Generally Accepted
9  Auditing Standards by . . . materially overstat[ing] . . . the Net
10 Asset Value of the Fund"; and (3) that two senior officers at Van
11 Wagoner Capital Management were the subject of an SEC investigation
12 regarding the value of private securities.  (<u>Id.</u> ¶ 24.)

13

14                      **II. Procedural Background**

15      Brignand filed suit in state court on February 27, 2007.  He
16 filed his first amended complaint (#1-2) on April 10, 2007, and
17 served the amended complaint on Van Wagoner on April 27, 2007.
18 Brignand's first amended complaint raised claims of (1) breach of
19 contract, (2) breach of the covenant of good faith and fair dealing,
20 (3) fraud, and (4) securities fraud.  Van Wagoner removed the action
21 to federal court on May 21, 2007, based on diversity of citizenship
22 under 28 U.S.C. § 1332.  (Notice of Removal (#1).)  Van Wagoner
23 attached a Motion to Dismiss (#1-3) to the removal notice (#1).  The
24 Court granted (#22) Van Wagoner's motion to dismiss (#1-3) on
25 September 29, 2008, but allowed Brignand leave to amend.
26      With his Second Amended Complaint (#28), Brignand now raises
27 three claims for relief.  First, Brignand claims that Van Wagoner
28                                    3

breached a fiduciary duty that it owed him.  Second, Brignand asserts that Van Wagoner committed fraud when it issued false and misleading statements in its annual reports in December 1999, 2000, 2002, and 2003.  In particular, Brignand states that the reports overstated the Technology Fund's NAV and concomitantly understated the fund's risk.  Brignand asseverates that he "would not have kept his investment in the tech fund or any Van Wagoner Fund, held his investment in the fund for approximately three years, cashed out with a significant loss, and given up his standing as a shareholder had [he] known the true risk associated with the Van Wagoner fund." (Id. ¶ 66.)  Brignand's third claim traces his second claim for relief, but under a theory of negligent misrepresentation with respect to the annual reports instead of fraud.

Van Wagoner filed a motion to dismiss (#34) the second amended complaint on December 1, 2008.  Brignand opposed (#38) the motion, and Van Wagoner filed a Reply (#41) brief.  The motion is ripe, and we now rule on it.  For the reasons below, the motion to dismiss (#34) will be granted.

### III. Standard for a Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife

4

1  Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original).
2  Moreover, "[a]ll allegations of material fact in the complaint are
3  taken as true and construed in the light most favorable to the non-
4  moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403
5  (9th Cir. 1996) (citation omitted).

6      Although courts generally assume the facts alleged are true,
7  courts do not "assume the truth of legal conclusions merely because
8  they are cast in the form of factual allegations." W. Mining
9  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,
10 "[c]onclusory allegations and unwarranted inferences are
11 insufficient to defeat a motion to dismiss." In re Stac Elecs., 89
12 F.3d at 1403 (citation omitted).

13     Review on a motion pursuant to Rule 12(b)(6) is normally
14 limited to the complaint itself. See Lee v. City of Los Angeles,
15 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on
16 materials outside the pleadings in making its ruling, it must treat
17 the motion to dismiss as one for summary judgment and give the non-
18 moving party an opportunity to respond. FED. R. CIV. P. 12(b);
19 see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A
20 court may, however, consider certain materials — documents attached
21 to the complaint, documents incorporated by reference in the
22 complaint, or matters of judicial notice — without converting the
23 motion to dismiss into a motion for summary judgment." Ritchie, 342
24 F.3d at 908.

25     If documents are physically attached to the complaint, then a
26 court may consider them if their "authenticity is not contested" and
27 "the plaintiff's complaint necessarily relies on them." Lee, 250

28                                  5

1 F.3d at 688 (citation, internal quotations and ellipsis omitted).  A
2 court may also treat certain documents as incorporated by reference
3 into the plaintiff's complaint if the complaint "refers extensively
4 to the document or the document forms the basis of the plaintiff's
5 claim." <u>Ritchie</u>, 342 F.3d at 908.  Finally, if adjudicative facts
6 or matters of public record meet the requirements of Federal Rule of
7 Evidence 201, a court may judicially notice them in deciding a
8 motion to dismiss.  <u>Id.</u> at 909; <u>see</u> FED. R. EVID. 201(b) ("A
9 judicially noticed fact must be one not subject to reasonable
10 dispute in that it is either (1) generally known within the
11 territorial jurisdiction of the trial court or (2) capable of
12 accurate and ready determination by resort to sources whose accuracy
13 cannot reasonably be questioned.").

14

15                          **IV. Discussion**

16      Van Wagoner bases its motion to dismiss on either one of two
17 theories.  First, Van Wagoner argues that all of Brignand's claims
18 are barred by the respective statutes of limitations.  Second, Van
19 Wagoner contends that Brignand's second amended complaint fails to
20 state a claim.

21      **A. Statute of Limitations**

22      In diversity actions, federal courts apply substantive state
23 law.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Nitco</u>
24 <u>Holding Corp. v. Boujikian</u>, 491 F.3d 1086, 1089 (9th Cir. 2007).
25 Statute of limitations issues are considered substantive.  <u>See</u>
26 <u>Muldoon v. Tropitone Furniture Co.</u>, 1 F.3d 964, 967 (9th Cir. 1993)
27 (stating that a "federal court exercising its diversity jurisdiction

28                                    6

. . . would have applied the substantive law of [the state], including [the state's] choice-of-law rules and its statutes of limitation"). Therefore, we look to Nevada law for the appropriate limitation period.

Under Nevada law, the statute of limitations for a breach of fiduciary duty claim is three years from the date the plaintiff "knew or reasonably should have known facts giving rise to [the] alleged breach . . . ." Shupe v. Ham, 639 P.2d 540, 542 (Nev. 1982). The statute of limitations for a fraud claim is three years from "the discovery by the aggrieved party of the facts constituting the fraud." NEV. REV. STAT. § 11.190(3)(d); see Sierra Pac. Power Co. v. Nye, 389 P.2d 387, 390 (Nev. 1964) ("mere ignorance of the existence of . . . the facts which constitute the cause will not postpone the operation of the statute of limitations . . . if the facts may be ascertained by inquiry or diligence"). The statute of limitations for a negligent misrepresentation claim is four years from "[w]hen the plaintiff knew or in the exercise of reasonable diligence should have known of the facts constituting the elements of [the] cause of action." Oak Grove Investors v. Bell & Gossett Co., 668 P.2d 1075, 1079 (Nev. 1983); see NEV. REV. STAT. § 11.220.

Brignand originally filed suit in state court on February 27, 2007. Thus, he must not have known of the facts giving rise to the breach of fiduciary duty and fraud claims until February 27, 2004, lest his claims be time-barred. Similarly, Brignand's negligent misrepresentation claim must have accrued no earlier than February 27, 2003, or it is barred.

### 1. Breach of Fiduciary Duty

Brignand alleges that Van Wagoner breached a fiduciary duty owed to him. The complaint, however, does not allege facts that explain how or when Van Wagoner breached any type of fiduciary duty. Rather, Brignand's entire allegation is that somehow "Defendant breached its duty." (SAC ¶ 40 (#28).)

As alleged, the Court is unable to divine the date on which the breach of fiduciary duty occurred. Nor will the Court hazard a guess as to that date. The defectiveness of the pleading prevents the Court from granting the motion to dismiss (#34) on this basis. We will, however, revisit the claim below.

### 2. Fraud

Brignand alleges that Van Wagoner defrauded him when it issued materially false and misleading statements in its annual reports in 1999, 2000, 2002, and 2003. In particular, Brignand avers that these statements overstated the NAV of certain private holdings of the Technology Fund. For purposes of the present motion to dismiss, the dispositive question to ask is, "when did Brignand discover the facts constituting the alleged fraud?"

The facts constituting the alleged fraud are as follows: (1) several putative class actions had been filed against various Van Wagoner funds in 2001 and 2002 in federal courts throughout the country, the existence of which had not been disclosed to Brignand; (2) several of the cases were consolidated in the Northern District of California; (3) on or about July 24, 2003, the plaintiffs in the consolidated action filed an amended complaint; (4) the amended complaint "included allegations that [various Van Wagoner funds had]

8

1  issued false and misleading statements to the public" concerning the
2  NAV of private placement investments; (5) Van Wagoner "blamed the
3  decline in its funds on mistakes . . . made by [its] independent
4  auditors"; and (6) placing the blame on the auditors was false and
5  misleading because Van Wagoner's officers — not the independent
6  auditors — were the ones who misrepresented the private investment
7  NAV.  (SAC ¶¶ 61, 26 (#28).)  In short, Brignand has two bases for
8  asserting fraud: (1) Van Wagoner did not disclose that the NAV
9  calculation was inaccurate; and (2) Van Wagoner did not disclose
10 that there was pending litigation concerning the NAV calculation.
11 Believing that the Van Wagoner funds had not misstated the NAV but
12 that any fault lay with the independent auditors, Brignand sold his
13 shares of the Technology Fund in July 2003 for approximately
14 $24,700; wherefore, he seeks damages.

15      Brignand contends that he became aware of the misstatements in
16 the annual reports in March 2005 when he received notice of a class
17 action suit against several Van Wagoner funds.  (<u>Id.</u> ¶ 67.)  Van
18 Wagoner argues that it disclosed the pending lawsuits to its
19 shareholders in its annual reports starting in 2002.

20      In the 2001 annual report, released in February 2002, the
21 "legal actions and regulatory matters" section of the report states
22 the following:

23          The Company, the Adviser, and others (including
            past and present directors) have recently been named as
24          defendants in several purported class actions alleging,
            among other things, violations of federal securities law
25          by failing to provide holdings at their fair value.
            Although the Company has not yet responded to these
26          actions, the Company believes this litigation is without
            merit and intends to defend the actions vigorously.  The
27          Company believes that the outcome of such legal actions

28
                                    9

1  will not have a material adverse effect on the results
   of operations or the net asset values of the Funds.

2

3  As a registered investment company, the Company is
   regulated by the Securities and Exchange Commission.  It
   is the policy of the Company to respond promptly and

4  completely to any inquiries made by the Securities and
   Exchange Commission.  The Company believes that there

5  are no pending inquiries from the Securities and
   Exchange Commission that will have a material adverse

6  effect on the results of the operations or the net asset
   values of the Funds.

7  (2001 Annual Report, D.'s Mtn. to Dismiss Ex. 1 (#34).)

8       Brignand argues that these disclosures were not sufficient to

9  put him on notice of the facts constituting the fraud because the

10 disclosures themselves were false; that is, Brignand contends that

11 the lawsuits had merit.  Further, Brignand asserts that the

12 disclosure of the other suits was not sufficient because it did not

13 provide names or jurisdictions in which the suits were pending.

14      Brignand's arguments are unavailing.  The disclosures address

15 Brignand's two bases for his fraud claim: (1) the report identifies

16 that there is a question about the proper valuation of the private

17 holdings; and (2) the report states that the company is being sued

18 because of the valuation question.  These disclosures put Brignand

19 on notice in February 2002 that the NAV calculation might not be

20 accurate.  Brignand had three years from February 2002, i.e.

21 February 2005, within which to bring his claim.[1]  Therefore, he did

22 not bring his claim in a timely manner, and the motion to dismiss

23 (#34) will be granted as to this claim.

24

25

26      [1]Brignand argues that the fraudulent statements were made in the
   annual reports in 1999, 2000, 2002, and 2003.  All of these statements

27 are outside of the three-year statute of limitations as Brignand did
   not file suit until February 2007.

28                                    10

### 3. Negligent Misrepresentation

Similarly, the annual report put Brignand on notice of the problems with the NAV with respect to his negligent misrepresentation claim.  Because he was informed of the NAV issues in February 2002, he needed to bring his claim by February 2006.[2]

### B. Failure to State a Claim

Because we will dismiss the fraud and negligent misrepresentation claims on statute of limitations grounds, we need only consider whether the second amended complaint states a claim for a breach of fiduciary as pled.  We conclude that it does not.

Brignand argues that he had standing to bring a breach of fiduciary duty claim, though not a derivative claim, because he was a shareholder when the allegedly wrongful acts occurred.

Brignand fails to cite any authority for the proposition that a false, misleading, or improperly prepared annual report breaches a fiduciary duty.  To be sure, Brignand correctly states that filing such a report violates a statutory and regulatory duty.  Those statutory and regulatory duties, however, are enforced through the

---

[2]The last annual report was filed in February 2003.  Although neither party raises the argument, because the statute of limitations for the negligent misrepresentation claim is four years, Brignand could argue his claim is within the four-year limit as he filed his suit in February 2007.  The 2003 disclosure, however, relates to the same NAV issue that was present in the 2002 annual report.  Thus, even though Brignand was again given notice of the NAV problem in 2003, the statute of limitations started to run in 2002 because that was when he was given notice of the facts underlying the alleged fraud. Therefore, his claim is still barred even with the application of the four-year statute of limitation.

1   securities laws and are not before the Court at this time.[3]  But
2   Brignand points to no authority demonstrating that there is a
3   fiduciary duty to provide accurate reports.

4       Moreover, Brignand's allegations in this respect are
5   conclusory.  Brignand does not allege facts that demonstrate a
6   breach of fiduciary duty; he simply concludes that a duty was
7   breached.  The complaint states that in "every securities
8   transaction, there is a fiduciary duty [owed] to the investor.
9   Defendant owed a duty to Plaintiff.  Defendant breached its duty."
10  (SAC ¶¶ 38-40 (#28).)  This phrasing makes it impossible to tell who
11  — for example, the corporation or its directors — breached what
12  fiduciary duty — for example, the duty of loyalty or the duty of
13  care — or how that fiduciary duty was breached — for example, by
14  usurping a corporate opportunity for personal gain.  We do not
15  "assume the truth of legal conclusions merely because they are cast
16  in the form of factual allegations." W. Mining Council, 643 F.2d at
17  624.

18      Most importantly, though, even if Brignand was owed a fiduciary
19  duty and even if he had alleged facts showing that duty had been
20  breached, he still would not be able to bring a breach of fiduciary
21  duty claim against the corporation itself.  First, a former
22  shareholder "has no standing to sue for breach of fiduciary duty on
23  a derivative claim" because a derivative claim is brought on behalf
24  of the corporation.  Cohen v. Mirage Resorts, Inc., 62 P.3d 720, 732

25

26      [3]The Court dismissed Brignand's prior securities laws claims
27  because they were time barred or failed to state a claim.  See Order
    of September 29, 2008 (#22).

28

1  (Nev. 2003).  As a former shareholder, Brignand has no standing to
2  bring such a claim.

3      Second, Brignand has not alleged, and cannot allege, that the
4  corporation owed him a fiduciary duty.  While a former shareholder
5  has standing "to seek relief for direct injuries that are
6  independent of any injury suffered by the corporation," id., the
7  redress comes from the offending officers and directors of the
8  corporation, not from the corporation itself, see id.  This is
9  because it is the officers and directors who owe the fiduciary duty
10 to the shareholders, as the corporation cannot act on its own.

11     On the facts alleged in the amended complaint, Brignand has
12 failed to plead a breach of a fiduciary duty.

13

14                           **V. Conclusion**

15     Brignand failed to bring his fraud and negligent
16 misrepresentation claims in a timely manner.  Further, Brignand has
17 failed to allege facts showing that Van Wagoner breached any
18 fiduciary duty it may have owed to Brignand.  The Court has
19 previously granted Brigand leave to amend; further amendment would
20 not resolve the underlying substantive limitations of the case.

21 //

22 //

23 //

24 //

25 //

26

27

28
                                      13

1    **IT IS THEREFORE HEREBY ORDERED THAT** Defendant's Motion to

2   Dismiss (#34) is **GRANTED**.

3       The Clerk shall enter judgment accordingly.

4

5

6   DATED: July 15, 2009.

7                                    *Edward C. Reed.*

8                                    _____
                                     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28